

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: § | | |
| § | Case No. 08-32362-H4-11 | |
| WILL CLAY PERRY, § | | |
| § | Chapter 11 | |
| Debtor. § | | |
| § | | |
| WILL CLAY PERRY, § | | |
| § | | |
| Plaintiff, § | | |
| v. § | Adversary No. 08-03465 | |
| § | | |
| ONE SUGAR LAKES PROFESSIONAL § | | |
| CENTRE PARTNERS, L.P.; COSTA § | | |
| BAJJALI; DAVID WALLACE; and § | | |
| W.C. PERRY PROPERTIES, L.P., § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM OPINION REGARDING DEFENDANT ONE SUGAR LAKES'
MOTION FOR SUMMARY JUDGMENT**
[Adv. Docket Nos. 37 & 46]

### I. INTRODUCTION

The individual debtor in the above-referenced Chapter 11 case has filed this adversary proceeding because he takes issue with the timeliness and the amount sought by One Sugar Lakes Professional Centre Partners, L.P. (Sugar Lakes) in its amended proof of claim, which is based upon damages that Sugar Lakes allegedly sustained due to W.C. Perry Properties's (Perry Properties) breach of a lease agreement, for which the debtor is liable as guarantor. The debtor has also joined two other defendants in this suit whom, he alleges, are liable for the alleged damages sustained by Sugar Lakes under an indemnity theory.

The debtor has filed a motion for summary judgment alleging that Sugar Lakes's amended proof of claim was untimely and should therefore be disallowed. Alternatively, the debtor requests

that this Court impose a cap on the amount sought in Sugar Lakes's amended proof of claim pursuant to 11 U.S.C. § 502(b)(6). Sugar Lakes has filed a cross motion for summary judgment alleging that its claim should not be capped at the amount proposed by the debtor, but rather at a higher amount. Sugar Lakes also asserts that its amended proof of claim should not be disallowed and requests that this Court grant summary judgment with respect to the debtor's affirmative defense on the basis of Sugar Lakes's alleged failure to mitigate damages.

For the reasons set forth below, this Court concludes that: (1) the debtor's motion should be denied; (2) Sugar Lakes's motion should be denied in part with respect to the cap imposed by 11 U.S.C. § 502(b)(6); (3) Sugar Lakes's motion should be denied in part with respect to the issue of mitigation of damages; and (4) Sugar Lakes's Motion should be granted in part with respect to its contention that its Amended Proof of Claim should not be disallowed.

## II. FINDINGS OF FACT

1. Sugar Lakes owns the property located at 15140 Southwest Freeway, Sugar Land, Texas 77478, in Fort Bend County, Texas. The property contains a two-story commercial building (the Building) with approximately 10,863 square feet of space available.

2. On March 1, 2006, Will Clay Perry (Perry or the Plaintiff), Costa Bajjali (Bajjali), and David Wallace (Wallace) initiated a Guaranty of Lease with respect to the lease of the Building by Perry Properties.

3. On March 13, 2006, Sugar Lakes and Perry Properties entered into a sixty-month commercial lease agreement for the Building.

4. Sugar Lakes designed the interior office space to meet the specific requirements of Perry Properties. Perry Properties took possession of the entire two-story building and paid its monthly rent to Sugar Lakes through January 2008.

5. The minimum rent under the lease was $18,074.00 per month. Perry Properties paid an additional $2,720.04 in monthly rent for a total monthly rent amount of $20,794.04.

6. On January 31, 2008, Sugar Lakes sent an email to Perry Properties inquiring as to whether Perry Properties would be paying rent for February 2008, and, if Perry Properties intended to terminate its lease agreement, when the keys would be turned over to Sugar Lakes.

7. On February 1, 2008, Perry Properties informed Sugar Lakes they had vacated the Building, and that its keys to the premises should have been submitted to Sugar Lakes.

8. On February 14, 2008, employees from Perry Properties attempted to access the Building in order to clean it, but found that the locks had been changed.

9. On February 18, 2008, Sugar Lakes emailed Perry Properties to determine when Perry Properties planned on cleaning the Building. Perry informed Sugar Lakes that same day that Perry Properties' employees had attempted to gain access to the Building on February 14, 2008 in order to clean, but the locks had been changed.

10. On February 22, 2008, Sugar Lakes gave Perry Properties final notice to clean the Building by 5:00 p.m. that same day, or it would be cleaned by Sugar Lakes at Perry Properties' expense.

11. Sugar Lakes has successfully rented the entire first floor of the Building. Since the date Perry Properties vacated the Building, Larry Pullen Photography, Inc. has occupied 1,505

|     | |
| --- | --- |
|     | square feet of the first floor. In July 2008, Sugar Lakes leased the remaining 3,240 square feet of the first floor of the Building to Upstream International, LLC. |
| 12. | On April 11, 2008, Perry filed a voluntary Chapter 11 petition, initiating the above referenced Chapter 11 case. [Case No. 08-32362, Docket No. 1.] |
| 13. | On April 22, 2008, the Court issued a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines, setting the deadline to file a Proof of Claim for August 20, 2008. [Case No. 08-32362, Docket No. 12.] |
| 14. | On July 10, 2008, Sugar Lakes filed its first Proof of Claim, asserting a claim for past due rent in the amount of $67,012.36, as of the date the case was filed. |
| 15. | On August 21, 2008, Sugar Lakes filed suit in the 400th Judicial District Court in Fort Bend County, Texas for breach of contract claims against Perry Properties, and a breach of guaranty against Bajjali and Wallace. |
| 16. | On November 6, 2008, Sugar Lakes filed its Amended Proof of Claim, asserting a claim for $544,280.53, representing the accelerated amount of all rental payments due under Perry Properties' rental agreement. |
| 17. | On May 6, 2009, the Plaintiff filed Plaintiff's Motion for Partial Summary Judgment Against Defendant, One Sugar Lakes Professional Centre Partners, L.P. (the Plaintiff's Motion). [Docket No. 37.] |
| 18. | On June 9, 2009, Sugar Lakes filed One Sugar Lakes Professional Centre Partners, L.P's Motion for Summary Judgment against the Plaintiff (Sugar Lakes's Motion). |

### III. CONCLUSIONS OF LAW

**A.     Jurisdiction and Venue**

The Court has jurisdiction over this adversary proceeding, and the motions brought in this adversary proceeding, pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Additionally, because the Debtor initiated this adversary proceeding before its plan was confirmed, this proceeding is also a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). *See, e.g., In re Enron Corp. Sec.*, 535 F.3d 325, 335-36 (5th Cir. 2008) (determining that bankruptcy courts generally retain jurisdiction over pre-confirmation claims based on pre-confirmation activities even though the actual dispute is tried post-confirmation); *Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hospital 1997)*, 351 B.R. 813, 838-39 (Bankr. S.D. Tex. 2006) (determining that the bankruptcy court retains jurisdiction over adversary proceedings filed pre-confirmation). This matter is also a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under Section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1409.

**B.     Summary Judgment Standard**

"Summary judgment is appropriate under Fed. R. Civ. P. 56 if the record discloses that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

5

matter of law." *Wash. v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990) (internal marks and citations omitted). "The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). To that end, this Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Id.* (quoting *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)). "Where the record taken as [a] whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

C.  **The Plaintiff's Motion should be denied.**

This Court issued a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines on April 22, 2008, setting the deadline to file a Proof of Claim for August 20, 2008. [Finding of Fact No. 13.] Sugar Lakes filed its original Proof of Claim on July 10, 2008, claiming the Plaintiff owed Sugar Lakes a total of $67,012.36 as of the date the bankruptcy case was filed. [Finding of Fact No. 16.] Sugar Lakes's theory of recovery at the time it filed its Proof of Claim did not include the acceleration clause in the lease. Sugar Lakes filed its original Proof of Claim for overdue rent from the months of February, March, and April 2008 in the amount of $62,382.12 (*i.e.* $20,794.04, multiplied by 3 months); a late fee on late payments of five cents ($0.05) for each dollar overdue, totaling $3,119.10; and interest on the late payments totaling $1,511.14. Sugar Lakes filed an Amended Proof of Claim on November 6, 2008, claiming an amount owed to it by the Plaintiff is $544,280.53. [Finding of Fact No. 16.] This amount reflects the total amount of rental payments owed to Sugar Lakes accelerated as due and owing as of the petition date.

"Amendments to timely creditor proofs of claim have been liberally permitted to 'cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.'" *In re Kolstad*, 928 F.2d 171, 175 (5th Cir. 1991) (quoting *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985)). "Amendments do not vitiate the role of bar dates: indeed, courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability." *In re Kolstad*, 928 F.2d at 175 (citing *In re Commonwealth Corp.*, 617 F.2d 415, 420 (5th Cir. 1980)). "If [the Plaintiff was] correct in arguing that allowing an amended proof of claim improperly circumvents the bar date rules, his argument would also undermine the well-established amendment process for timely claims. The durability of that process, however, reinforces [the Court's] conclusion that bar dates do not inevitably straitjacket creditors in incorrect claims." *In re Kolstad*, 928 F.2d at 175.

In the instant case, Sugar Lakes filed its Proof of Claim in a timely manner, but filed an Amended Proof of Claim after the August 20, 2008 deadline. [Finding of Fact Nos. 14 & 16.] Sugar Lakes has not asserted any new grounds of liability in its Amended Proof of Claim, but, instead uses a different theory of recovery based on the facts set forth in the original claim. In both the original Proof of Claim and the Amended Proof of Claim, Sugar Lakes listed the same basis for the claim, that being the Guaranty of Lease Agreement dated March 13, 2006. [Finding of Fact Nos. 14 & 16.] The Plaintiff did not object to Sugar Lakes's original Proof of Claim.[1] Sugar Lakes has not

---

[1] In *Gilbreath*, this Court determined that "[c]reditors should not be permitted to file woefully deficient proofs of claim in hopes that the debtor will not object, but then, when the debtor does object, to file amendments at the eleventh hour and rely on those amendments at the hearing. This is one of the reasons Rule 15 was enacted-to prevent undue prejudice and surprise to litigants and to permit opposing parties time to prepare for trial." *In re Gilbreath*, 395 B.R. 356, 367 (Bankr. S.D. Tex. 2008) (citing *United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (determining that 'prejudice to the opposing party,' 'bad faith,' and 'repeated failure to cure deficiencies' are considerations under Rule

submitted additional evidence or alleged additional liability under another contract. In its Amended Proof of Claim, Sugar Lakes merely evoked a provision in the lease to recalculate its damages under the lease, and thus the Plaintiff's liability under the Guaranty of Lease Agreement. Therefore, the Plaintiff's Motion for Summary Judgment should be denied, and Sugar Lakes will be allowed to maintain its Amended Proof of Claim filed on November 6, 2008.

**D.      Sugar Lakes's Motion should be granted in part and denied in part.**

      **1.      Amended Proof of Claim 34-2 should be allowed.**

As discussed above, although Sugar Lakes's Amended Proof of Claim was not filed prior to the August 20, 2008 deadline, amendments to timely creditor proofs of claim have been liberally permitted to plead a new theory of recovery on the facts set forth in the original claim. *See In re Kolstad*, 928 F.2d at 175. Thus, Sugar Lakes's Motion for Summary Judgment is granted in part insofar as this Court concludes that its Amended Proof of Claim should be allowed.

      **2.      Sugar Lakes's Amended Proof of Claim is subject to the limitations in 11 U.S.C. § 502(b)(6), but there is a genuine issue of material fact as to whether February 2008 rent is unpaid rent under § 502(b)(6)(B).**

The Plaintiff asserts that Perry Properties abandoned the premises on January 31, 2008, and that the lease terminated on that date. If the lease did, in fact, terminate on January 31, 2008, Sugar Lakes would not be able to include the February 2008 unpaid rent on top of the maximum permissible amount under 11 U.S.C. § 502(b)(6)(A). Pursuant to section 21.02 of the lease agreement and the "generally accepted measures of recovery in breach of lease actions, [Sugar Lakes] had two remedies available to it for compensation for the breach. [Sugar Lakes] could ' . .

---

15)). The instant case can be distinguished from *Gilbreath* because Perry did not object to Sugar Lakes's original Proof of Claim, and the Amended Proof of Claim was filed with sufficient time for Perry to prepare for trial.

. treat the abandonment as a breach of the contract resulting in a termination of the lease and hold [the Plaintiff] for damages, or disregard the notice, keep the contract alive and sue for rents accruing thereafter.'" *Meineke Discount Muffler Shops, Inc. v. Coldwell Banker Prop. Mgmt. Co.*, 635 S.W.2d 135, 138 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (quoting *Stubbs v. Stuart*, 469 S.W.2d 311, 312 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ)).

Sugar Lakes admits their Proof of Claim is controlled by 11 U.S.C. § 502(b)(6), and is thus capped at a certain dollar amount. Section 502(b)(6) reads as follows:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
> . . . .
>> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
>> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
>> (i) the date of the filing of the petition; and
>> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

11 U.S.C. § 502(b)(6). The Plaintiff also agrees 11 U.S.C. § 502(b)(6) represents the maximum amount recoverable due to the termination of the lease agreement. [Adv. Docket No. 48.] The parties disagree over whether the rent from February 2008 should be included in the cap imposed by 11 U.S.C. § 502(b)(6) as rent reserved or unpaid rent.

"The lease in question is a triple net lease; consequently, the lessee not only makes a regular rental payment, but also is responsible for payment of *ad valorem* taxes, insurance, utilities, and

9

repairs and maintenance. Pursuant to the terms of the lease, these expenses are identified as components of 'rent reserved' for purposes of § 502(b)(6) calculation." *In re Metals USA, Inc.*, 2004 WL 771096, at *3 (Bankr. S.D. Tex. Jan. 15, 2004). Since the "additional rent" provided for under the lease agreement was constant and regular, it is possible to calculate those expenses into the 11 U.S.C. § 502(b)(6) cap analysis in the instant case as part of the rent reserved. Under 11 U.S.C. § 502(b)(6)(A), the Proof of Claim total is $249,528.48 (i.e. $20,794.04 per month, multiplied by 12 months).[2] Both parties are in agreement that the cap imposed by § 502(b)(6)(A) is $249,528.48.

"Whether a lease had been terminated by a tenant's surrender of the leasehold property is a question of state law. In Texas, surrender of a leasehold interest means that a tenant yields the leasehold estate to the landlord so that the leasehold estate comes to an end by mutual agreement of the landlord and tenant. The landlord and tenant must mutually agree to surrender the lease. The agreement may be express or implied. If the tenant vacates the premises and the landlord accepts possession, then an implied agreement to terminate the lease has been established." *In re SKA! Design, Inc.*, 308 B.R. 777, 781 (Bankr. N.D. Tex. 2004) (citing *Arrington v. Loveless*, 486 S.W.2d 604, 607 (Tex. Civ. App.—Fort Worth 1972, no writ); *Edward Bankers & Co. v. Spradlin*, 575 S.W.2d 585, 586-87 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ)).

In the instant case, it is uncertain as to when Sugar Lakes accepted possession of the Building. Perry Properties informed Sugar Lakes on February 1, 2008 that the building had been vacated. [Finding of Fact No. 7.] The next email between Perry Properties and Sugar Lakes is dated February 18, 2008, at which time Sugar Lakes admits to having changed the locks. [Finding of Fact

---

[2] Part 2 totals under 11 U.S.C. § 502(b)(6)(A) analysis would only be $112,287.81 (i.e. $20,794.04 per month, multiplied by 36 months remaining on the lease, multiplied by 15%), and thus the greater of the two would be one year of rent reserved.

No. 9.] Sugar Lakes's changing of the locks constitutes an implied agreement of surrender under Texas law. *See In re SKA! Design, Inc.*, 308 B.R. at 781; *Spradlin*, 575 S.W.2d at 586-87. Thus, whether Sugar Lakes changed the locks on or after February 1 will be relevant to the calculation of the cap under § 502(b)(6)(A). "Therefore, if, upon an abandonment of the premises by the tenant in possession and a default in the rental obligation, the landlord re-enters and relets for his own benefit, the tenant's obligations will be considered terminated by operation of law. The tenant's abandonment constitutes an offer to terminate which is deemed accepted by the landlord's acts inconsistent with the tenant's continued possession." *Vanity Fair Properties v. Billingsley*, 469 S.W.2d 453, 457, n.5 (Tex. Civ. App.—San Antonio 1971, ref'd n.r.e.). However, because Sugar Lakes has failed to prove which date it changed the locks, a genuine issue of material fact exists as to whether February 2008 should be included in the unpaid rent calculation pursuant to 11 U.S.C. § 502(b)(6)(B).

3.  **There is a genuine issue of material fact as to Sugar Lakes's failure to mitigate damages.**

Sugar Lakes contends the Plaintiff "cannot establish that he, as a guarantor, has standing under Texas law to assert Perry Properties' mitigation defense." In other words, Sugar Lakes argues that "[t]he guarantor does not stand in the shoes of the indemnitor." *Kenneth H. Hughes Interests, Inc. v. Westrup*, 879 S.W.2d 229, 235 (Tex. App.—Houston [1st Dist.] 1994, writ denied). However, Sugar Lakes's argument is flawed. In *Kenneth*, the issue was whether the defendant qualified as a consumer under the Deceptive Trade Practices-Consumer Protection Act (the DTPA). Tex. Bus. & Com. Code Ann. § 17.45. "The [guarantors'] status as persons who promised to answer for the obligations of [debtors] under the lease, should [the debtors] fail to meet its obligations, does

11

not provide the necessary logic for us to hold that the [guarantors] are consumers, particularly when their obligations as guarantors *are not an issue in this appeal.*" *Kenneth H. Hughes Interests, Inc.*, 879 S.W.2d at 235 (emphasis added). Under the DTPA, "a 'consumer' means an individual, partnership, corporation, this state, or a subdivision or agency of this state who *seeks or acquires* by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4) (emphasis added). The Court in *Kenneth* refused to extend the definition of a "consumer" to a guarantor because a guarantor does not seek or acquire anything. Furthermore, the obligations of the guarantors in *Kenneth* were not at issue on appeal, and, therefore, the reasoning in *Kenneth* does nothing to further Sugar Lakes's contention.

A guarantor does have standing to raise the affirmative defense that a claimant failed to mitigate damages under Texas law. *See Lunsford Consulting Group, Inc. v. Crescent Real Estate Funding VIII, L.P.*, 77 S.W.3d 473, 476-77 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In *Lunsford*, however, "[b]ecause [the guarantor] did not meet his burden of producing summary judgment evidence raising a fact issue on the affirmative defense of mitigation, [the Court did] not address whether the Lease violated public policy, whether the affidavit . . . was proper, or whether a judicial admission prevented [the guarantor] from contesting the date he entered into the lease." *Lunsford Consulting Group, Inc.*, 77 S.W.3d at 477. If the guarantor in *Lunsford* did not have standing to bring the defense of failure to mitigate damages, the Court would have no reason to address whether the guarantor had met his summary judgment evidence burden. Thus, *Lunsford* indicates that it is possible for a guarantor to raise an affirmative defense based on a claimant's failure to mitigate damages.

"Section 91.006 of the Texas Property Code requires a landlord to mitigate his damages after the breach of a lease and declares void any lease provision to the contrary." *McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 277 (Tex. App.—Dallas 2006, no pet.); *see* Tex. Prop. Code Ann. § 91.006 (Vernon Supp. 2005); *Lunsford Consulting Group, Inc.*, 77 S.W.3d at 476; *see also Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299-300 (Tex. 1997), *abrogated in part by* Tex. Prop. Code Ann. § 91.006. "The tenant bears the burden of proof to demonstrate that the landlord has mitigated or failed to mitigate damages and the amount by which the landlord reduced or could have reduced his damages." *McGraw*, 195 S.W.3d at 277 (citing *Austin Hill Country Realty*, 948 S.W.2d at 299).

"A tenant's contention that the landlord failed to mitigate his damages must be pleaded as an affirmative defense." *McGraw*, 195 S.W.3d at 277 (citing *Austin Hill Country Realty*, 948 S.W.2d at 300). However, "when a tenant contends that the landlord has actually mitigated his damages, the breaching tenant need not plead the landlord's actual mitigation as an affirmative defense." *Austin Hill Country Realty*, 948 S.W.2d at 300. "Rather, the tenant's evidence of the landlord's mitigation tends to rebut the measure of damages under the landlord's claim of breach and may be admitted under a general denial." *Id.* "The offset of a landlord's breach of lease damages by the amount he was able to mitigate his damages raises a fact issue regarding the reasonableness of the offset, precluding summary judgment." *McGraw*, 195 S.W.3d at 278 (citing *Nautilus Training Ctr. No. 2, Inc. v. Seafirst Leasing Corp.*, 647 S.W.2d 344, 347 (Tex. App.—Corpus Christi 1982, no writ)). In the instant case, both the Plaintiff and Sugar Lakes disagree over the reasonableness of the offset. Both parties are, for the most part, in agreement on what Sugar Lakes did or did not do to mitigate its damages. The sole issue with respect to Sugar Lakes's failure to mitigate damages

is whether its attempts to mitigate the damages caused by Perry Properties' breach of the lease agreement were reasonable. The reasonableness of the offset is a genuine issue of material fact, and, thus, summary judgment is precluded.

### IV. CONCLUSION

In sum, there is no genuine material issue of fact with respect to the filing of its Amended Proof of Claim and the cap imposed on its claim by 11 U.S.C. § 502(b)(6), and thus summary judgment is appropriate as to these two issues. However, there is a genuine issue of fact with respect to Sugar Lakes's purported failure to mitigate damages and whether the February 2008 rent should be included in the calculation of unpaid rent under § 502(b)(6). Thus, summary judgment is not appropriate on these two issues.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Opinion.

Signed on this 12th day of August, 2009.

_____
Jeff Bohm
United States Bankruptcy Judge